IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-00139-PSF-BNB

DOUGLAS BELL,

    Plaintiff,

v.

COCA-COLA ENTERPRISES INC., a Delaware corporation,

    Defendant.

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. # 24), filed December 8, 2005, accompanied by defendant's supporting brief and exhibits A through I ("Defendant's Motion").  Plaintiff filed his response in opposition on January 31, 2006 (Dkt. # 34) together with two affidavits.  Defendant filed its reply brief on February 15, 2006 (Dkt. # 37).  A Final Pretrial Order was entered on February 21, 2006 (Dkt. # 38), with a supplement filed by defendant on February 28, 2006 (Dkt. # 42), and a supplement filed by plaintiff on March 7, 2006 (Dkt. # 47).  This case is set for a three-day trial to a jury commencing June 26, 2006.  The motion is ripe for determination.

**I.**    **BACKGROUND**

Plaintiff's complaint, filed in state court on October 28, 2004, asserts common law claims for fraud, negligence, outrageous conduct and breach of contract arising out of plaintiff's employment relationship with defendant Coca-Cola Enterprises, Inc.  The

defendant timely removed the case to federal court on January 26, 2005, asserting federal d jurisdiction based both on diversity of citizenship and federal question as the case ostensibly presented issues under the Labor Management Relations Act, 29 U.S.C. § 185(a) (Notice of Removal at 2-3)

Plaintiff claims, essentially, that he was fraudulently induced to move from California, where he worked as a driver for a Coca Cola bottling plant, to work at defendant's operation in Colorado Springs, Colorado. The basis of the inducement, plaintiff alleges, was that Bill Pitts, a representative of defendant, told plaintiff that drivers at defendant's plant earn "between $45,000 to $48,000 per year." (Complaint ¶ 14). Plaintiff relocated to Colorado Springs in late May or early June 2002 and began working for defendant as a driver on or about June 11, 2002. He alleges "[f]rom the outset, while the job was essentially the same as the job in northern California, the pay was considerably less than what had been represented to plaintiff." (Complaint ¶ 17). Plaintiff alleges that he complained about the salary (Complaint ¶ 18). Testimony indicates that he attempted to get pay adjustments commencing no later than July 2002 but was unsuccessful (Bell Depo., Exhibit A to Defendant's Motion, at 108-09). In November 2002 plaintiff Bell "quit" the position with defendant (Complaint ¶¶ 19-21). As noted, he filed the complaint in state court on October 28, 2004, less than two years after he left his employment but more than two years after he started work in Colorado.

## II.    PLAINTIFF'S CLAIMS AND DEFENDANT'S RESPONSES

Plaintiff avers in his First Claim for Relief that Pitt's representations regarding compensation were false representation of material facts upon which he justifiably

2

relied thus constituting common law fraud.  He avers in his Second Claim for Relief that defendant was negligent, apparently in making the representations, and he was damaged as a result.  He alleges in his Third Claim for Relief that defendant's conduct constituted outrageous conduct.  Plaintiff's Fourth Claim for Relief alleges that defendant entered into an employment contract with plaintiff through a collective bargaining agreement with the Teamster's Union in California, and failed to act in "good faith" under the contract and "intentionally and falsely represented employment prospects to plaintiff."  (Complaint ¶¶ 41-42).

Defendant contends that plaintiff's claims for negligence and outrageous conduct are barred by the Colorado two-year statute of limitations applicable to tort claims, C.R.S. § 13-80-102 (Defendant's Motion at 23-24).  Defendant contends that the breach of contract claim is also barred by the two-year Colorado statute of limitations contained in C.R.S. § 13-80-102(1)(a), rather than the general breach of contract statute of limitations of three years contained in C.R.S. § 13-80-101(a), because the alleged breach of contract is "tortious" breach of contract.  Alternatively, defendant asserts that there can be no claim for breach of contract as it was not a party to the collective bargaining agreement with the California employer of plaintiff (Defendant's Motion at 21-23).  Finally, defendant argues that plaintiff's fraud claims must be dismissed, asserting a number of grounds, but which essentially boil down to an argument that even if Pitts made the statement attributed to him by plaintiff (which Pitts and defendant deny), plaintiff could not, and did not, justifiably rely on the

3

statement to relocate to Colorado or to expect a position with defendant (Defendant's Motion at 13-21).

### III.     STANDARD OF REVIEW

Summary judgment is appropriate under F.R.Civ.P. 56(c) if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See also Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). When applying this standard, the Court reviews the pleadings and the documentary evidence in the light most favorable to the nonmoving party. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank*, *N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In addition, "'where the non-moving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) quoting *Celotex, supra*, 477 U.S. at 322. Conclusory allegations alone are not sufficient to defeat a motion for summary judgment. *See e.g. White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995); *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994).

**IV.   ANALYSIS**

    **A.   The Negligence and Outrageous Conduct Claims**

Plaintiff's complaint does not assert any specific duty the defendant owed to plaintiff that was breached by the conclusory allegation of negligence, nor does the complaint allege with specificity the act that supposedly gives rise to a claim for outrageous conduct.  But, even assuming the essential elements of such claims are pled in the complaint, the Court finds that plaintiff knew of the alleged negligence regarding the compensation for the job, or suffered the consequences of the outrageous conduct, shortly after commencing work for defendant.  The complaint itself alleges "[f]rom the outset" plaintiff was aware that the "pay was considerably less than what had been represented."  (Complaint ¶ 17).  Plaintiff's affidavit reiterates that "[i]t did not take long for me to realize that I would not earn anywhere near what Pitts had said.  My projected yearly income would be in the mid thirty thousand range."  (Bell Affidavit, Exhibit 1 to Plaintiff's Opposition, ¶ 9).  And in his deposition plaintiff testified that by July 24, 2002, he was complaining to management about his compensation, he was told that no adjustment would be made, but he continued to work (Bell Depo. at 108-09).

Whatever the nature of plaintiff's negligence and outrageous conducts claims, he was on notice of such claims by July 2004 and the statute of limitations began to run.  There is no factual basis to find, as plaintiff suggests, that he was not on notice of such claims until he quit on November 12, 2002 (Plaintiff's Response at 12).  His complaint filed October 28, 2004 was outside the two-year statute of limitations

applicable to his negligence and outrageous conduct claims.  Defendant is entitled to summary judgment on the Second and Third Claims for Relief.

### B. Breach of Contract Claim

Defendant argues that the two-year statute of limitations applies to this claim because plaintiff's breach of contract claim is more similar to a tort claim than a breach of contract claim.  Citing to *Insurance Co. of N. Am. v. Aspen Alps Condo. Ass'n, Inc.*, 915 F. Supp 1122, 1125 (D. Colo. 1996), defendant contends that the Court must look at the "nature of the right sued upon" and the "precise character of the relief requested," not the particular form of action in determining which statute of limitations applies (Defendant's Motion at 21-22).  Plaintiff's breach of contract claim alleges a failure to act in "good faith" and intentional and false representations regarding employment prospects, which sound more like tortious actions rather than a breach of an agreed upon contract.  Such claims are barred by the two-year statute of limitations, just as plaintiff's negligence and outrageous conduct claims.

Alternatively, the Court also finds that plaintiff's Fourth Claim for Relief is subject to dismissal because it fails to state a claim for relief against this defendant.  Defendant has adduced evidence that the Colorado Springs facility is not subject to a collective bargaining agreement (s*ee* Affidavit of Shelley Duchlinski, Exhibit F to Defendant's Motion , ¶ 4), and it is apparently independent of the California location where plaintiff previously worked.  Plaintiff testified that he was aware the Colorado Springs facility was nonunion (Bell Depo. at 83) and he also testified that he "absolutely" knew he would not be covered by the collective bargaining agreement when he relocated to

Colorado Springs (Bell Depo. at 90-91). Accordingly, his Fourth Claim for Relief alleges breach of a contract to which defendant was not even a party, and which plaintiff concedes he knew was not binding on defendant.

In order to avoid the effect of such a finding, plaintiff attempts in his response to recast his Fourth Claim for Relief into a breach of some unspecified "implied contract" between plaintiff and defendant (Plaintiff's Response at 11). No such implied contract was pled in the complaint, nor was such an implied contract alleged in the Final Pretrial Orders except one "created by fraud" (*see* Revised Final Pretrial Order (Dkt. # 38) at 2). In fact, plaintiff is still listing the union collective bargaining agreement as a trial exhibit in the Pretrial Order (Plaintiff's Exhibit 9, Revised Final Pretrial Order at 6). The terms of the supposed implied contract are nowhere set forth. Plaintiff himself testified that he did not recall discussing with Pitts the typical terms of an employment contract such as the method of compensation, whether the pay was hourly or on commission, which route he was going to be assigned (Bell Depo. at 84-86).

Plaintiff's Fourth Claim for Relief thus must be dismissed as not stating a claim for breach of contract, and alternatively as barred by the applicable two-year statute of limitations.

### C.  Fraud Claim

Defendant argues that plaintiff's fraud claim is subject to summary judgment as the undisputed facts show that even if Pitts made the statement about compensation attributed to him by plaintiff, which defendant ardently denies, plaintiff's own actions

show that his move to Colorado Springs was not made in reliance on that statement, and therefore it cannot be the basis for a fraud claim.

In support of this argument, defendant meticulously details the steps taken by plaintiff and the events which occurred relating to plaintiff's relocation, including signing a contract to sell his house in California, turning in a letter of resignation to the California employer, working his last day at the job there, traveling to Colorado Springs where he signed a contract to buy a house in Woodland Park, Colorado–all of which occurred before May 30, 2002 according to defendant (*see* Defendant's Motion at 4-8; Appendix A to Motion (Dkt. # 25)). Defendant supports its argument with an affidavit by Pitts, which states that the first time he spoke with plaintiff was May 30, 2002, after plaintiff had taken all these steps to relocate to Colorado Springs (Pitts Affidavit, Exhibit E to Defendant's Motion, at ¶ 4). Thus, defendant argues, plaintiff could not have relocated based on the representation attributed to Pitts, even if such statement had been made by him.

Plaintiff, however, has submitted his own affidavit in opposition to this motion which states that the conversations with Pitts began in "early April 2002" and that he had several conversations with Pitts during April 2002 (Bell Affidavit, Exhibit 1 to Plaintiff's Response at ¶¶ 4, 6). It was during these conversations, plaintiff attests, that Pitts told him that the average driver in Colorado Springs makes between $45,000 and $48,000 per year, which caused him to become interested in moving to Colorado Springs and taking the steps he thereafter took to relocate (*id.* at ¶¶ 4-7). Plaintiff's recollection of the timing of the conversation is squarely at odds with Pitt's recollection,

and supplies a genuine issue of material fact that precludes summary judgment on the basis advanced by defendant.

Defendant replies that plaintiff's affidavit is a sham affidavit, offered to create an issue of fact where none exists, as it is inconsistent with plaintiff's deposition testimony given prior to the affidavit.  If the Court were to find that the affidavit is a "sham" as defendant suggests, the Court could and would disregard it.  *See Franks v. Nimmo,* 796 F. 2d 1230, 1237 (10th Cir. 1986)*; Hill v. Martinez*, 87 F. Supp. 2d 1115, 1127 (D. Colo. 2000).

However, the Court has reviewed the plaintiff's deposition testimony, and while it is not entirely clear when plaintiff testified he first spoke with Pitts, there is testimony indicating it may have been earlier than May 30, 2002 as Pitts avows.  For example, plaintiff seems to be stating that he spoke with Pitts before he completed the "nomination form" dated May 2, 2002 (attached as Exhibit 2 to the deposition) (*see* Bell Depo. at 70-74).  He also testified that in those conversations he asked Pitts about the pay, and was told that the average driver makes between $45,000 and $48,000 per year (Bell Depo. at 75).  To be sure, plaintiff did not expressly testify that these conversation occurred in early April 2002, or even in April 2002 at all, but the testimony is not so inconsistent with the plaintiff's affidavit that the Court can say the affidavit is a sham.

Defendant also contends that there is no evidence to show that Pitts made the alleged statement with the intent that plaintiff rely on it, a necessary element of a fraud claim (Defendant's Motion at 13-16).  However, there is no dispute here that whenever

Pitts had the conversation with plaintiff, he was certainly aware that plaintiff was considering, even pursuing, employment with defendant (*see* Pitts Affidavit, ¶¶ 4-5). It only logically follows that statements made in the course of such conversations could, if made, have been factors influencing plaintiff's decision, even if as defendant argues Pitts was not seeking to persuade plaintiff to relocate. It is also plausible that if Pitts made such a statement, as plaintiff claims, Pitts knew or should have known that the plaintiff would reasonably rely upon such a representation. Thus, the Court cannot find that defendant is entitled to summary judgment based on this argument.

Defendant further argues that plaintiff has not shown, and cannot show, that Pitts' alleged statement about compensation was false, or would have been false. In this regard defendant argues that plaintiff failed to work a full year, either due to his quitting or due to his own intervening action of getting injured in a fight, and thus there is no proof plaintiff would not have made $45,000 had he worked a full year (Defendant's Motion at 15). Defendant's argument may be factually supportable, and may very well be a factor in the amount of damages, if any, that could be recovered, but it does provide a basis for summary judgment.

As defendant itself has correctly argued, in the context of a case such as this "[f]raud requires more than the mere nonperformance of a promise or the failure to fulfill an agreement to do something at a future time." *Nelson v. Gas Research Inst.*, 121 P.3d 340 (Colo. App. 2005). Statements of future events are not actionable in fraud, unless the speaker deliberately falsified the statement to induce reliance, or had a present intention when the statement was made not to fulfill the promise made. *Id.*

10

Defendant argues that application of these principles also results in summary judgment in its favor (Defendant's Motion at 20-21; Defendant's Reply at 2-3).

Here, however, it does not appear that plaintiff is alleging that Pitts made a statement of a future event, that is that plaintiff **would earn** between $45,000 and $48,000 per year, but rather that Pitts stated only that the average driver earns $45-48,000 per year, a statement of a present fact (Complaint at ¶ 14; Bell Depo. at 75). Assuming Pitts made the statement attributed to him, the issue is not whether plaintiff would have earned $45-48,000, but rather whether the average driver employed by defendant in Colorado then earned such amounts. Plaintiff seems to recognize this issue, as he has submitted evidence in the form of an affidavit from a former employee of defendant stating that in year 2002 the "average driver" employed by defendant would make about $35,000 per year "give or take a couple thousand." (Affidavit of Chris Cambridge, Exhibit 2 to Plaintiff's Response, ¶ 5). Accordingly, while defendant correctly argues the law, it does not apply to the factual dispute at issue here.

Although a jury may well find that plaintiff's reliance on a statement about the average compensation paid to others without some discussion and clear understanding of what would he himself would be paid does not justify changing jobs and relocating out-of-state, that issue is not now before the Court and cannot be decided as a matter of law. Accordingly, summary judgment on this argument is not appropriate on this present record.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment (Dkt. # 24) is GRANTED in part and DENIED in part.

The Motion is GRANTED as to plaintiff's Second, Third and Fourth Claims for Relief and those claims are dismissed with prejudice.

The motion is DENIED as to plaintiff's First Claim for Relief.

DATED: June 1, 2006

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge